Armando PEREZ, et al, Plaintiffs
vs.
BOSTON HOUSING AUTHORITY
Defendant

BOSTON HOUSING AUTHORITY
Plaintiff
vs.
George REEDER and Irene REEDER
Defendants

No. 17222 E.E.1

Superior Court
Commonwealth of Massachusetts

August 5, 1981

Counsel for Plaintiff
Mark E. Scheiber (M.C.A.D.)
Myra K. McAdoo (Tenants Policy Council)
Daniel D. Sullivan
Greater Boston Legal Services
Gershon M. Ratner
Anna Mae Cole
Edmund P. Daley
Leslie Newman, Daniel S. Manning
R. Peter Anderson
Gerard Clark (Tenants Policy Counsel)
Frederick T. Golden
Counsel for Defendants
Arthur L. Johnson (George & Irene Reeder)
John K. Markey
Charles A. Clifford (Frances Campbell)
John M. Reed (Coronis Construction)
Mintz, Levin, Cohn, Glousby & Poreo
Withington, Cross, Park & Groden
Richard M. Bluestein
General Council (B.H.A.)

## FINDINGS, RULINGS, AND ORDER ON THE DEFENDANTS George and Irene REEDER'S MOTION FOR LEGAL FEES AND COSTS

### INTRODUCTION

In the above-referred to motion the defendants George and Irene Reeder move that the Boston Housing Authority (BHA) be ordered "to pay the legal fees and costs of the defendants in the trial of the above (eviction) case and the

subsequent appeal to the Supreme Judicial Court . . .". The defendants seek payment of legal fees in the amount of $37,700 and of costs in the amount of $742.03, in each instance supported by an affidavit. I note that the BHA has thus far incurred "outside" legal fees and costs totalling $68,671 plus hundreds of hours of "in-house" time in seeking to evict the Reeders.

In support of their motion the Reeders claim, first of all, that a provision of their lease, which provision would purportedly make them liable for the BHA's legal fees and costs should the BHA prevail its efforts to evict them, would, pursuant to G.L. c. 186, sec. 20, require that the BHA pay their legal fees and costs because it was they who, in fact, prevailed in the above-referred to case. Secondly, the Reeders argue that because this Court on prior occasions has approved and ordered the payment by the BHA of legal fees and costs to both the plaintiff tenant class and to the plaintiff Tenants' Policy Council, then this Court should order the payment of the Reeders' legal fees and costs as "individual class members who were forced to litigate class issues because their issues were not fairly and adequately represented by their class representatives". Thirdly, the Reeders claim that as minority (versus majority) members of the class they should be paid by the BHA their legal fees and costs pursuant to the general equitable powers of this Court. Fourth, again relying on the general equitable powers of this Court, the Reeders argue that they "have succeeded through litigation in creating, preserving, protecting or increasing the common benefit to the class" and, accordingly, this Court should order the BHA to pay their legal fees and costs. Fifth and finally, the Reeders seek to have their legal fees and costs paid pursuant to G.L. c.186, sec. 14 and G.L. c.231, sec. 6 E-G. The Reeders have since waived that claim.

## BACKGROUND

After the plaintiff tenants' class and the plaintiff Tenants' Policy Council jointly moved that the BHA establish an emergency eviction procedure and in response thereto such a procedure was adopted, the BHA sought to evict the Reeders pursuant to that procedure. A trial was held on August 6 and 7, 1980, and in its verdict the jury specifically found (1) that the Reeder's son, then eighteen and living with them, unlawfully entered the apartment of another tenant residing at the same development and slashed the other tenant's throat without any justification or excuse; (2) that the Reeder's son had a reputation for violence of which the Reeders knew or should have known; (3) that the presence of the Reeder's son in their household constituted either a reasonable likelihood of serious interference with the rights of other tenants or amounted to the creation of or maintenance of a serious threat to other tenants; and (4) that what occurred was a violation of a lease between the Reeders and the BHA and the BHA should be permitted to evict the Reeders for cause shown. A judgment was thereafter entered in accordance with that verdict and the Reeders appealed from that judgment.

In **Lewis H. Spence, Receiver v. George and Irene Reeder,** Mass. Adv. Sh. (1981) 229, the Supreme Judicial Court reversed the judgment evicting the Reeders. The Court ruled that "We conclude that the interests of the Reeders, and persons similarly situated, were not adequately represented when . . . the judge acted on the joint motion requesting the establishment of the emergency eviction procedure." **Id.** at 240. The Court ruled further that "We can say that the interests of the persons in the position of the Reeders should have been represented in the proceedings, and because those interests were not represented, the Reeders are not bound by the (emergency eviction procedures) order and could not fairly be subjected to its terms.

Consequently, the Reeders' case should not have been tried pursuant to the emergency eviction procedure and the judgment against them must be reversed.'' **Id.** at 241.

## FINDINGS OF FACT

I accept as true the amounts the Reeders' very competent counsel indicated have been incurred on the Reeders' behalf as legal fees and costs in the trial of the above-referred to case and its subsequent appeal to the Supreme Judicial Court. I accept the stipulation of the parties (Exhibit #1) that the lease' between the Reeders and the BHA provides in relevant part, at Paragraph 13, that "All legal costs and charges incurred by the Boston Housing Authority in connection with any eviction action brought by the Boston Housing Authority will be charged to Tenant, and Tenant hereby agrees to pay the same unless Tenant prevails in Court. The charge to tenant, for service of the notice to quit, when delivered by an employee of the Authority, shall be one (1) dollar and when served by a constable shall be the same as the constable charges the Boston Housing Authority. Legal costs and charges shall include all court costs, and other expenses incident to the eviction. Management may waive assessment of court costs and legal fees and charges to avoid undue hardship to the tenant.'' I accept as true and find as set out in the affidavit of John Sabino, an attorney employed by the BHA since October 1977 "that the general practice of the BHA since October, 1977 has not been to seek the recovery of attorneys fees in summary proceedings against tenants of the BHA'' and I also accept as true his assertion that he "cannot recall any instance since October, 1977, in which the BHA has sought to recover attorneys' fees in summary proceeding against a tenant of the BHA.''

## RULINGS OF LAW

With respect to the Reeders' first argument, G.L. c. 186, sec. 20, provides in relevant part that

"Whenever a lease of residential property shall provide that in any action or summary proceeding the landlord may recover attorneys' fees and expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease or that amounts paid by the landlord therefore shall be paid by the tenant as additional rent, there shall be implied in such lease a covenant by the landlord to pay to the tenant the reasonable attorneys' fees and expenses incurred by the tenant as the result of the failure of the landlord to perform any covenant or agreement on its part to be performed under the lease or in the successful defense of any action or summary proceeding commenced by the landlord against the tenant arising out of the lease, and the agreement that such fees and expenses may be recovered as provided by law in an action commenced against the landlord or by way of counterclaim in any action or summary proceeding commenced by the landlord against the tenant. Any waiver of this section shall be void as against public policy.'' Added by St. 1977, c.159, sec. 1.

As pointed out in the BHA's Memorandum in Opposition to the Reeders' Motion, sec. 2 of chapter 159 of the Acts of 1977, which is not made apart of the General Laws, states that "The provisions of this Act shall not apply to a lease entered into prior to the effective date of this Act.'' The Act was approved May 5, 1977, and was effective ninety days thereafter. The lease between the BHA and the Reeders is dated April 22, 1974, and creates a tenancy commencing on May 1, 1974. That lease remained in effect until the BHA sought to terminate

the Reeders' tenancy. Therefore, by its terms, the provisions of G.L. c.186, sec. 20 do not apply to the lease between the BHA and the Reeders.

With respect to the Reeders' second, third, and fourth claims, which all seem to assert that the Reeders, in representing a so-called minority portion of the tenants' class, both functioned as "private attorneys general" or as "public interest litigants" and also conferred a substantial benefit upon the tenants' class as a whole by their (the Reeders') successful appeal which invalidated the emergency eviction procedures jointly requested by the plaintiffs' tenants' class and the plaintiff Tenants' Policy Council: I note that under the terms of the order establishing the emergency eviction procedures, those procedures were to apply to situations where, as indicated in footnote 5 in **Reeder, supra,** a tenant "(1) physically harmed another tenant(s) or employee(s) of the BHA in or nearby a development operated by the BHA; (2) committed acts of serious violence against the property of another tenant(s) or employee(s) of the BHA in or nearby a development operated by the BHA; (3) threatened to seriously physically harm another tenant(s), BHA employee(s), or the property of other tenants or of the BHA in or nearby a development operated by the BHA; or (4) carried or kept upon the premises or any common area or development of the BHA a Class A, Class B, or Class C controlled substance as defined in G.L. c.94c, sec. 31 or a dangerous weapon as defined in G.L. c.269 sec. 10(a), (b), or (k)."

On the basis of reports to me by the Receiver and by his staff, after views of several of the BHA's developments, and after conversations with scores of residents of those developments, I specifically find, as I have so often found in the past, that both the actuality and the fear of serious crime are pervasive in most of the BHA's developments. Murders, rapes, robberies, and home invasions are commonplace, and because the criminal justice system has failed and continues to fail utterly in dealing with such crimes and in providing any semblance of protection to the BHA's tenants, the Receiver is compelled to employ the eviction process to provide some semblance of social control and order in the BHA's developments. The findings of fact in support of the establishment of the BHA's emergency eviction procedures underscore those observations. The Reeders' reliance upon a "private attorneys general" theory is misplaced. See, **Bournewood Hospital v. Mass. Commonwealth Against Discrimination,** 371 Mass. 303 (1976). To suggest that the Reeders sought either to benefit the plaintiff tenants' class or in fact did so by their undermining of the BHA's efforts to respond to the situations which cause the life of the typical BHA tenant to be a hell on earth is inherently contradictory. To claim that the Reeders acted in the public interest is inconsistent with what members of the public perceive to be in their interest.

### ORDER

On the basis of the above findings and rulings, the Reeders' motion is ORDERED denied.

**Paul G. Garrity**
**Justice of the Superior Court**